**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JASON D. H.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-CV-163-JED-JFJ** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Jason D. H. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

I.      **General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908 (effective to Mar. 26, 2017). The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's

decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History and the ALJ's Decision

Plaintiff, then a 36-year-old male, applied for Title II and Title XVI benefits on June 7, 2012, alleging a disability onset date of April 4, 2012.  R. 12, 191-201.  Plaintiff's claims for benefits were denied initially on August 21, 2012, and on reconsideration on November 26, 2012.  R. 64-89.  Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on September 11, 2013.  R. 32-59.  The ALJ issued a decision on October 30, 2013, denying benefits and finding Plaintiff not disabled because he was able to perform past relevant work.  R. 12-22.  In that decision, the ALJ found Plaintiff to have the "severe" step-two impairments of osteoporosis and gastrointestinal disorder.  R. 14.  The Appeals Council denied review, and Plaintiff appealed to the United States District Court.  R. 1-3; ECF No. 2 in Case No. 15-CV-65-JED-PJC.  On November 24, 2015, the Commissioner filed an unopposed motion to remand the case for further development of the record and a new decision.  R. 570-572.  On December 21, 2015, the United States District Court granted the Commissioner's motion and remanded the case to the Commissioner.  R. 567-568.  Specifically, the District Court adopted the Magistrate Judge's Report and Recommendation, which recommended ordering the Appeals Council "to instruct the ALJ to evaluate the opinion of Plaintiff's treating physician, John Schumann, M.D., [and] in so doing further evaluate the Plaintiff's residual functional capacity [("RFC")], and further evaluate whether Plaintiff can perform his past relevant work."  R. 567-569.

The Appeals Council remanded Plaintiff's case to the ALJ for reconsideration on March 28, 2016, instructing the ALJ to (1) give further consideration to Plaintiff's maximum RFC during the entire period at issue and, in particular, evaluate Dr. Schumann's treating source opinion and

explain the weight given to such opinion evidence; (2) further evaluate whether Plaintiff has past relevant work that he can perform; and (3) if warranted by the record, obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. R. 576-577. On remand, the ALJ conducted a second hearing on October 4, 2016. R. 527-555. On November 4, 2016, the ALJ issued a second decision, again denying benefits and finding Plaintiff not disabled. R. 472-482. In the second decision, the ALJ denied benefits because she found at step two that Plaintiff had no severe impairment or combination of impairments. R. 475-481. The Appeals Council denied Plaintiff's request for review, and Plaintiff again appealed to the United States District Court. R. 463-466; ECF No. 2.

In the remand decision, the ALJ found that Plaintiff's date last insured was December 31, 2019, and that he had not engaged in substantial gainful activity since the alleged onset date of April 4, 2012. R. 475. At step two, the ALJ found that Plaintiff had medically determinable impairments of status post gunshot wound, unspecified abdominal pain, and depression. *Id.* However, the ALJ found Plaintiff did not have any severe impairment or combination of impairments. *Id.*

The ALJ summarized Plaintiff's testimony. R. 476-477. *See* R. 532-550. Most notably, Plaintiff testified that he had been working part-time for a moving company since 2013. He worked three to four days per week, sitting and packing boxes. He was able to lift up to 15 pounds. At home, he was able to do laundry. He was able to sit for only 10 to 15 minutes, after which he had to stretch. He was able to stand for 10 to 15 minutes, and he was able to walk one block. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, persistence, and

limiting effect of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 477.

The ALJ summarized the objective medical evidence in the record, which spanned from April 2011 to August 2013. This evidence showed a history of abdominal pain, which Plaintiff alleged he had suffered since he had had surgery for a gunshot wound as a child. R. 347-352. Emergency room records from 2011 and 2012 revealed largely normal abdominal examinations, despite some tenderness in 2012, and otherwise normal physical examinations. R. 347-352, 405, 410, 431-432. In April 2011, the emergency room doctor diagnosed Plaintiff with undifferentiated abdominal pain and acute exacerbation of chronic abdominal pain. R. 352. A chest x-ray taken in May 2011 revealed metallic densities in the left axillary region implying shrapnel or gunshot wound, but no active cardiac or pulmonary disease process or other significant abnormality. R. 392. An abdominal computed tomography ("CT") scan of Plaintiff's abdomen and pelvis, taken on April 11, 2012, revealed a radiopaque foreign body adjacent to the right sacroiliac joint likely representing bullet fragments but no acute intra-abdominal process. R. 411. The ALJ concluded these findings, while demonstrating that Plaintiff has sought treatment for pain and that Plaintiff had the remnants of a gunshot wound, were not fully consistent with the allegations of disabling pain, because Plaintiff's objective examination findings were normal. R. 477. In addition, at an emergency room visit in July 2013, following a motor vehicle accident, physical examination revealed some mild right paraspinal muscular tenderness, and the examining physician noted impressions of lumbar strain and status post motor vehicle accident. R. 460. He was prescribed Flexeril and Ultram. *Id.*

The ALJ also reviewed records from Plaintiff's primary care physician, Dr. Schumann. R. 478. Plaintiff saw Dr. Schuman beginning in April 2012, with complaints of right-side stomach

pain.  R. 361.  Plaintiff complained that the pain affected his ability to work or stand for long periods, and he stated that Tylenol helped the pain.  *Id.*  Examination revealed a well-healed abdominal scar, no abdominal tenderness, and hypoactive bowel sounds.  R. 364.  Dr. Schumann prescribed Tramadol for pain and referred Plaintiff to a general surgical consultation regarding his bullet fragments.  R. 365.  In May 2012, Bryce Murray, M.D., evaluated Plaintiff regarding abdominal surgery but did not identify a surgical cause for Plaintiff's pain.  R. 381.  Dr. Murray believed some of Plaintiff's symptoms may be related to constipation, and he recommended fiber supplementation.  *Id.*  In June 2012, Dr. Schumann agreed to write a letter for Plaintiff, requesting lighter duty with less bending and lifting given his chronic pain syndrome.  R. 384.  He noted that Plaintiff was taking Dulcolax with good results regarding his constipation.  R. 382.  In April 2013, Dr. Schumann evaluated Plaintiff's symptoms of depression, prescribing Sertraline and referring Plaintiff to psychiatry.  R. 450.

Regarding opinion evidence, the ALJ gave little weight to a medical source statement ("MSS") prepared by Dr. Schumann in May 2013.  R. 437-446, 478-480.  Dr. Schumann opined that Plaintiff could perform the lifting requirements of light work and would be limited to sitting and standing for two hours each in an eight-hour workday, with further postural limitations. Plaintiff would have to be permitted to shift positions at will, and he would require the ability to walk around for ten minutes every hour.  Dr. Schumann stated Plaintiff would need an unscheduled break every four hours, for ten minutes, and Plaintiff would be off-task for 25 percent or more of the workday and would be absent from work about two days per month.  Dr. Schumann stated Plaintiff suffered from an affective disorder of depression and hopelessness.

The ALJ gave Dr. Schumann's opinions little weight and rejected the limitations therein, as he found them to be inconsistent with Dr. Schumann's treatment notes.  In particular, the ALJ

noted that Dr. Schumann stated in his treatment notes that a laxative had been working well for Plaintiff and that Plaintiff had been taking Tramadol for pain.  R. 479.  Dr. Schumann had also prescribed Sertraline for Plaintiff's complaints of depression.  However, there were no treatment records with Dr. Schumann after April 1, 2013, which would show whether the medications were effective or if Plaintiff's symptoms changed since that date.  The ALJ further noted that emergency room notes dated April 11 and April 13, 2012, indicated Plaintiff would be able to return to work shortly with no restrictions.  R. 304, 335.  The ALJ accorded these work releases some weight. The ALJ further noted that there were no recent treatment records in the case file and that earlier treatment was inconsistent.  R. 479-480.  Plaintiff also testified he had worked part-time since 2013, and that he had supplied the answers to questions on Dr. Schumann's MSS.  R. 480, 539-541, 550.

The ALJ gave great weight to the state agency physical opinions of Luther Woodcock, M.D., and Kenneth Wainner, M.D.  R. 480.  Both reviewers opined that Plaintiff's physical impairments were non-severe.  R. 66-67, 72-73, 80-81, 87-88.  The ALJ found their opinions were consistent with and supported by the medical evidence in this case.  *Id.*

Because the ALJ found Plaintiff had a medically determinable mental impairment, the ALJ evaluated the four "paragraph B" criteria for evaluating mental disorders.  In this regard, the ALJ found Plaintiff had mild limitations in the three functional areas of activities of daily living; social functioning; and concentration, persistence, or pace.  R. 480-481.  Further, Plaintiff had experienced no episodes of decompensation.  Accordingly, the ALJ concluded Plaintiff's mental impairment was non-severe.  Because Plaintiff had no severe physical or mental impairment or combination of impairments, the ALJ concluded Plaintiff was not disabled.

### III.   Issues

Plaintiff raises three points of error in his challenge to the denial of benefits: (1) the ALJ failed to comply with the District Court's remand order and the Appeals Council's order remanding the case; (2) the ALJ failed to properly evaluate the opinion evidence; and (3) the ALJ's consistency analysis was flawed.  ECF No. 18.

### IV.   Analysis

#### A.   The ALJ Was Required to Review the Record *De Novo* on Remand

Plaintiff contends the ALJ failed to comply with the orders of the District Court and the Appeals Council in remanding the case back to the ALJ.  Plaintiff argues that, on remand, the ALJ was prohibited from finding Plaintiff had no severe impairment at step two, because the ALJ had found both severe and non-severe impairments in the first decision.  The remand orders directed the ALJ to consider and weigh Dr. Schumann's opinions and determine whether Plaintiff had past relevant work he could perform.  R. 567-572, 576-577.  Plaintiff argues these mandates assume Plaintiff suffered at least one severe impairment and would necessarily require the ALJ to proceed past step two of the sequential evaluation process.

Plaintiff asserts that the ALJ's step-two finding of no severe impairment violates the doctrine of "law of the case" and the "mandate rule."  These doctrines provide that, "'once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case' and there must be compliance with the reviewing court's mandate."  *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (quoting *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah,* 114 F.3d 1513, 1520 (10th Cir. 1997)).  These doctrines "apply to judicial review of administrative decisions, and 'require[] the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a

compelling reason to depart.'" *Id.* (quoting *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir.1998)).  In addition, the regulations provide that, in the event of a remand order, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. §§ 404.977(b), 416.1477(b).

The undersigned concludes that the ALJ's second decision does not violate the law of the case doctrine or mandate rule.  The District Court and the Appeals Council directed the ALJ to (1) give further consideration to Plaintiff's maximum RFC and in so doing, evaluate the treating source opinion; and (2) further evaluate whether Plaintiff has past relevant work that he can perform.  The ALJ's redetermination of Plaintiff's medically determinable and severe impairments at step two was not inconsistent with this order.  As the Tenth Circuit has stated, the ALJ considering a case on remand is not bound to his earlier decision. *Campbell v. Bowen*, 822 F.2d 1518, 1521-22 (10th Cir. 1987).  "To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." *Id.* at 1522.  *See Miller v. Barnhart*, 175 F. App'x 952, 955-56 (10th Cir. 2006) (holding that when the ALJ's decision stands as the final decision of the Commissioner, federal courts should review the ALJ's decision under the usual Social Security standards, "rather than focusing on conformance with the particular terms of the [Appeals Council's] remand order"); *Hamlin v. Barnhart,* 365 F.3d 1208, 1224 (10th Cir. 2004) (stating that "[i]t was certainly within the ALJ's province, upon reexamining [claimant's] record [after district court and Appeals Council remand], to revise his RFC category"); *Houston v. Sullivan,* 895 F.2d 1012, 1015 (5th Cir.1989) ("Once the case was remanded to the ALJ to gather more information about the extent of [claimant's] disability, the ALJ was free to reevaluate the facts.").

Here, the ALJ was not bound on remand by her prior determination that Plaintiff had severe impairments.  Before issuing the second decision, the ALJ held another hearing, at which Plaintiff testified as to his current conditions.  Plaintiff testified that he had been working part-time for the past three years, packing boxes at his cousin's moving company.  R. 539-541.  The ALJ gave Plaintiff an opportunity to submit additional medical records, but Plaintiff submitted no new records to support his impairments.  R. 530.  The ALJ considered this additional factual information in making the determination on remand that Plaintiff had no severe impairments.  R. 479 (noting "[t]here is no recent treatment in the case file"), R. 480 (noting "[t]here is ongoing work activity since the alleged onset date of disability and the claimant testified that he has worked part-time since 2013").  Because the ALJ decided the case at step two, the case did not warrant reconsideration of the later steps.  The ALJ did not contravene the remand instructions by declining to reconsider matters that were relevant only to the later steps, such as Plaintiff's maximum RFC and past relevant work.

## B.      The ALJ Reasonably Considered and Evaluated the Opinion Evidence

### 1.      Dr. Schumann

Plaintiff argues the ALJ erred by failing to properly analyze the opinion evidence.  First, Plaintiff argues the ALJ improperly granted "little weight" to the treating source MSS opinions of Dr. Schumann.  Dr. Schumann opined that Plaintiff's physical limitations would require him to shift regularly between sitting, standing, and walking, that he would need unscheduled breaks, and that he would be off-task for 25% or more of the workday.  R. 441-446.  Dr. Schumann also opined that Plaintiff suffered from depression and hopelessness.  R. 443.  The ALJ gave these opinions "little weight" and rejected the limitations therein, because Dr. Schumann's treatment notes did not support his medical opinion, and because substantial evidence in the case record was inconsistent with Dr. Schumann's medical opinion.  R. 479-480.  Plaintiff contends the ALJ's

explanations for giving the MSS opinions diminished weight are improper, because the ALJ focused on favorable treatment notes, ignored less favorable notes in the record, and improperly gave more credit to the 2012 work release notes in the record.

Plaintiff's argument is not compelling. The ALJ adequately explained and gave good reasons for her evaluation of Dr. Schumann's opinions. R. 478-480. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (instructing that ALJ "will always give good reasons" for the weight given to treating source's medical opinion). Specifically, the ALJ noted that Dr. Schumann had treated Plaintiff on several occasions but did not treat Plaintiff after April 1, 2013. R. 478-479. The ALJ noted that Dr. Schumann had prescribed a laxative with good results, Tramadol for pain, and Sertraline for depression, but there were no recent treatment records to establish whether the medications were effective or how Plaintiff's conditions had progressed since April 2013. The ALJ was entitled to discount Dr. Schumann's opinion where it was inconsistent with his own treatment notes. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015) ("The ALJ also properly relied on the fact that Dr. Morse's impairment ratings on the forms were far more extreme than his own treatment notes would suggest.").

The ALJ also noted that Dr. Schumann's opinions were inconsistent with work release notes dated April 2012, which the ALJ gave some weight. R. 479. The ALJ noted that Dr. Murray, a surgical specialist, did not indicate surgery for Plaintiff's pain. R. 479-480. The ALJ further noted that Plaintiff admitted he supplied responses to the questions on Dr. Schumann's MSS form. R. 480, 550. Finally, the ALJ noted Plaintiff's inconsistent treatment history, lack of recent treatment records, and ongoing ability to work part-time. R. 479-480. *See* 20 C.F.R. §§

404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinions that were inconsistent with other medical evidence in record).

Plaintiff argues the ALJ's assessment improperly ignored certain notes from Dr. Schumann's treatment records, such as Plaintiff's flat affect; chronic pain syndrome; elevated blood pressure; and referral to the psychiatry department. *See* R. 361-365, 382-384, 448-451. However, the ALJ cited many of these notations in the decision. R. 478-480. Moreover, these notes do not demonstrate that the ALJ's stated reasons for according little weight to Dr. Schumann's opinions were improper or unsupported in the record. The ALJ satisfied his duty to be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted).

Finally, Plaintiff contends the ALJ erred by (1) incorrectly characterizing Dr. Schumann's MSS as opining that Plaintiff could perform the lifting requirements of "light" work, and (2) failing to repeat all of Dr. Schumann's MSS opinions in the decision. *See* R. 437-446, 478-479. These arguments are unavailing. Plaintiff is correct that the ALJ mischaracterized Dr. Schumann's opinions regarding Plaintiff's lifting ability. However, Plaintiff fails to explain how this single mis-statement, or the ALJ's failure to repeat all of Dr. Schumann's limitations, affected the ALJ's decision in any way. The undersigned identifies no reversible error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("certain technical errors" are minor enough to be harmless).

### 2.   Agency Reviewers

Plaintiff argues that the ALJ should not have relied on the opinions of the state agency reviewers over the opinions of Dr. Schumann, because (1) the opinions of the agency physicians

are generally due the least weight of all; (2) the agency physicians' opinions were prepared in 2012, before Plaintiff submitted later medical records; and (3) the ALJ gave the agency physicians' opinions less weight in the first decision than in the second decision.

None of Plaintiff's three arguments are persuasive. First, the ALJ was not required to give greater weight to Dr. Schumann's opinions over the opinions of the agency reviewers. The ALJ stated that he gave "great weight" to the agency physical opinions because they were "consistent with and supported by the medical evidence in this case." R. 480. By contrast, the ALJ found that Dr. Schumann's opinions were unsupported by his own treatment notes and the other evidence in the record, including Plaintiff's own testimony. R. 479-480. The ALJ adequately explained his reasons for according greater weight to the agency reviewers' opinions, and those explanations are sufficient to overcome the presumption in favor of giving greater weight to an examining source's opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (noting that, although an examining medical-source opinion is "presumptively entitled" to more weight than a non-examining source's opinion, an examining source opinion may still be dismissed or discounted based on an evaluation of the regulatory factors). *See also* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (providing that ALJs "are not required to adopt any prior administrative medical findings but they must consider this evidence according to [the relevant regulations], as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation").

Second, Plaintiff points to no records that post-date the agency reviewers' opinion which might support greater limitations than the agency reviewers found. Accordingly, the ALJ did not err by relying on the agency reviewers' opinions, even though additional records were later submitted. *See Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (finding no error in the

ALJ's giving significant weight to agency reviewer opinion, even though agency reviewer did not review later treating physician opinions or subsequent medical records, because "nothing in the later medical records [claimant] cites supports the disabling limitations found by [the treating physician opinions] or a material change in [claimant's] condition that would render [the agency] opinion stale").

Third, as explained above in Part IV.A, the ALJ was not bound by her prior decision in preparing the second decision, and the ALJ did not impermissibly "contradict" herself by changing the weight given to the agency opinions in the second decision.  Before issuing the decision on remand, the ALJ held another hearing at which Plaintiff testified, and she gave Plaintiff the opportunity to submit updated medical records, although Plaintiff submitted no new records.  The ALJ was entitled to re-evaluate the opinion evidence in light of this new information.

**C.     The ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016).  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities."  *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities."  *Id.*  Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the

claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[1]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Here, Plaintiff alleges the ALJ erred by discounting his statements regarding impairments in his activities of daily living and supportive comments from his physicians. In particular, Plaintiff points to notes from Dr. Schumann, Dr. Murray, and emergency room providers. *See, e.g.*, R. 302, 381, 449-451. Plaintiff contends these notations corroborate his complaints of pain and minimal activities of daily living. *See* ECF No. 18 at 13-14.

Plaintiff's consistency arguments are unavailing. The ALJ gave specific reasons for finding Plaintiff's statements regarding his symptoms to be inconsistent with the objective medical evidence, the agency opinions, and Plaintiff's own statements regarding his activities of daily living and the severity of his physical impairments. R. 476-481. Specifically, the ALJ noted that, despite his allegations of pain and depression, Plaintiff's treatment history was inconsistent and

---

[1] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

there were no medical records past 2013 to indicate whether prescribed medications were working or whether Plaintiff's conditions had changed. *See* R. 479. The ALJ also noted Plaintiff's testimony that he he had been working part-time for the last three years, and that Dr. Murray did not identify any problems that required surgery. R. 479-480. The ALJ was permitted to consider Plaintiff's ability to work part-time and his inconsistent treatment history in evaluating the consistency of his testimony with objective evidence regarding the severity of his impairments. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (ALJ must consider inconsistencies in the evidence and conflicts between claimant's statements and the rest of the evidence).

The ALJ also reasonably concluded that the objective evidence undermined Plaintiff's allegations regarding the severity of his symptoms. *See, e.g.*, R. 477-478 (stating that medical records noted routinely normal physical examinations, which were inconsistent with Plaintiff's allegations of pain and functional limitations), 479 (noting that Plaintiff was prescribed a laxative for abdominal pain, which had good results, and that return-to-work letters were inconsistent with severity of symptoms). *See Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir. 2012) (routinely normal clinical examination findings undermined claimant's allegations). Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

The ALJ's discussion of Plaintiff's subjective complaints and the objective medical evidence satisfies SSR 16-3p. Accordingly, the undersigned concludes that the ALJ committed no error in her consistency analysis of Plaintiff's subjective complaints regarding the severity of his physical and mental conditions.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by September 18, 2019.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 4th day of September, 2019.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**